UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81114-Civ-HURLEY
    (03-80009-Cr-HURLEY)
MAGISTRATE JUDGE P.A. WHITE

ROBERT J. JABBOUR,        :

    Movant,          :

v.                  :        REPORT OF
                        MAGISTRATE JUDGE

UNITED STATES OF AMERICA,  :

    Respondent.      :
_____

Introduction

    The movant has filed this pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking the constitutionality of his convictions for three counts of tax evasion and conspiracy to commit tax evasion entered following a jury verdict in case no. 03-80009-Cr-Hurley.

    This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts.

    The court has reviewed the motion (Cv-DE#1) with supporting memorandum (Cv-DE#3) and exhibits (Cv-DE#4), the government's response to this court's order to show cause with multiple exhibits (Cv-DE#s14), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

    The movant raises the following claims:

1.[1]  The  government  failed  to  disclose
       exculpatory  evidence,  in  violation  of
       Brady[2] and Giglio.[3] (Cv-DE#1; Cv-DE#3:18).

2.  He  was  denied  effective  assistance  of
    counsel, where his lawyer failed to:

    1.  seek  recusal  of  the  trial  judge
        based    on    judicial    bias    and
        prejudice;

    2.  challenge on appeal that the trial
        judge was biased against the movant;

    3.  conduct adequate pretrial investiga-
        tion; and,

    4.  challenge and/or otherwise object to
        his  sentence  which  violated  the
        dictates of Booker[4]. (Cv-DE#1:6; Cv-
        DE#3:30).

<u>Factual and Procedural History</u>

Factually,  the  evidence[5]  adduced  at  trial  established  that
Nicholas  DeAngelis,  the  movant's  coconspirator,  obtained  $1.5
million from investors, telling them that his companies, Velvet
Hammer Consulting Group ("VHCG"), and GIASI, made bridge loans and
invested  in  real  estate,  pain  management  clinics,  and  other
enterprises,  which  yielded  high  rates  of  return,  promising  to
triple their investment when he took the companies "public." The

---

[1]For purposes of judicial clarity, the claims are numbered as they appear
in the movant's motion and supporting memorandum.

[2]Brady v. Maryland, 373 U.S. 83 (1963).

[3]Giglio v. United States, 405 U.S. 150 (1972).

[4]United States v. Booker, 543 U.S. 220, 229 (2004).

[5]The facts are gleaned from the Eleventh Circuit's written but unpublished
opinion.

investors' monies were not invested as promised, but rather were spent by DeAngelis or disbursed to the movant, who received the monies primarily through deposits into bank accounts maintained by coconspirators Carlie Hupman, Luann Hazan, and Tonya Rose.

Procedurally, on October 22, 2003, a Second Superseding Indictment was returned against the movant and his coconspirators,[6] Louis Claps, Hupman, Hazan, and Rose. (Cr-DE#102). Specifically, the movant was charged with conspiracy to commit mail and wire fraud, and interstate transportation of property taken by fraud (Count 1), nine counts of wire fraud (Counts 2-10), seven counts of mail fraud (Counts 11-17), four counts of transportation of stolen property and money (Counts 18-21), conspiracy to commit money laundering (Count 22), eight counts of money laundering (Counts 23-30), ten counts of concealing money laundering (Counts 31-40), three counts of conducting monetary transactions with criminally derived property (Counts 41-43), conspiracy to impair or impede the Internal Revenue Service ("IRS") (Count 48), two counts of federal income tax evasion (Count 49-50), and identity theft (Count 51). (Cr-DE#102).

On April 29, 2004, the court entered an order severing the movant's trial from that of coconspirators Hupman, Hazen, and Rose, based on the movant's <u>Byrd</u>[7] affidavit, in which he stated that he

---

[6]Coconspirator Hazen entered into a negotiated plea agreement with the government. (Cr-DE#s280,282,283). Coconspirators Hupman and Rose proceeded to trial at which the movant testified as a defense witness. At that time, coconspirator Rose was acquitted, but Hupman was found guilty as charged. (Cr-DE#s316,320).

[7]<u>Byrd v. Wainwright</u>, 428 F.2d 1017 (5th Cir. 1970). <u>Byrd</u> requires a defendant to demonstrate (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect and (4) that the co-defendant will in fact testify if the cases are severed.... If such a showing is forthcoming, the district court must then (1) examine the significance of the testimony in relation to the defendant's theory of defense, (2) assess the extent of prejudice caused by the absence of the testimony, (3) pay close attention to judicial administration and economy and (4) give weight to the timeliness of the motion. <u>See</u> <u>United States v. Pepe</u>, 747 F.2d 632, 651 (11th Cir.

would testify as a defense witness for these coconspirators if the trials were severed. (Cr-DE#279). On May 20, 2004, the court entered another order severing the trial of the movant and Claps from that of DeAngelis. (Cr-DE#314). DeAngelis proceeded to trial where he was found guilty as charged, following a jury verdict. (Cr-DE#365). Thereafter, Claps entered into a negotiated plea agreement with the government. (Cr-DE#s368,369,370).

On June 22, 2004, the movant's trial began. (Cr-DE#372). Prior to jury selection, however, the movant pleaded guilty to his own tax evasion, as charged in Count 49 of the Second Superseding Indictment. (Cr-DE#s372;447:3-5,216-254). After jury selection, but before opening statements, the movant and the government announced that they had finalized a plea agreement in which the movant would also plead guilty to the conspiracy charged in Count 48, agree to make restitution to the victims of the fraud in an amount not greater than $200,000.00, and agree to summary judgment in the civil tax case against him. (Cr-DE#450:659-60). In exchange, the government agreed to dismiss all remaining counts. (Id.). The court, however, without any explanation, summarily rejected the plea agreement, finding it unacceptable.[8] (Cr-DE#450:660).

The movant proceeded to trial where he was acquitted of all charges, with the exception of Counts 48 and 50, involving the conspiracy with DeAngelis to impair or impede the Internal Revenue Service ("IRS") and aiding and abetting DeAngelis' income tax evasion, where he was found guilty as charged, following a jury verdict. (Cr-DE#401; 467:4544-46).

---

1984)(citing United States v. DeSimone, 660 F.2d 532, 539-40 (5th Cir. 1981)(applying Byrd).

[8]At sentencing months later, the court explained that it refused to accept the plea because it did not include treatment as to the movant's identity theft of Gyonki Berki. (Cr-DE#477:4891-92).

The jury was then asked to return special verdicts determining the dollar value of the actual or intended loss attributable to the movant arising from the tax counts, including the conspiracy to impair or impede the IRS, and whether during the course of the conspiracy, the movant used sophisticated means to execute or conceal the scheme. (Cr-DE#467:4547-82). Thereafter, the jury returned special verdicts finding that the dollar value of the tax loss was between $80,001 and $200,000, and that sophisticated means were not used. (Cr-DE#402; 468:4589-91).

Prior to sentencing, a PSI was prepared which reveals as follows. Pursuant to U.S.S.G. §2T1.1(a)(1), the base offense level for an offense involving tax evasion is taken from the tax table at U.S.S.G. §2T4.1. (PSI ¶33). Because the tax loss in this case involved more than $1,000,000, but less than $2,500,000, the base offense level was set at 22. (Id.). An additional two levels were added, pursuant to U.S.S.G. §2T1.1(b)(2), because the offense involved sophisticated means. (PSI ¶34). Four more levels were added pursuant to U.S.S.G. §3B1.1(a) based on the movant's role as a leader or organizer in the offenses that involved five or more participants or was otherwise extensive. (PSI ¶36). Two more levels were added, pursuant to U.S.S.G. §3C1.1, based on the movant's obstruction of and/or attempt to obstruct justice. (PSI ¶37). Thus, with all of the enhancements, the total adjusted offense level was 30. (PSI ¶41).

The probation officer further determined that the movant had a total of 2 criminal history points, resulting in a criminal history category II. (PSI ¶¶47-48). Based on a total base offense level 30 and a criminal history category II, the guideline range was set at 108 to 135 months in prison. (PSI ¶87).

After receipt of the PSI, the movant filed objections thereto, contesting numerous factual recitations contained therein and the

enhancements based on role, obstruction of justice, sophisticated means, as well as, the determination of the amount of loss, and the denial of a reduction in the base offense level based on the movant's acceptance of responsibility. (Cr-DE#423).

On January 23, 2005, after the Supreme Court's decision in Booker, the movant appeared for sentencing. (Cr-DE#2005). At that time, the court rejected the movant's argument that Booker required the court to base his sentence upon the facts found by the jury in the supplemental verdict, reminding the movant that the parties had agreed to obtain an advisory verdict on amount of loss and sophisticated means, and that the Supreme Court had since clarified in Booker that the courts were authorized to impose any sentence within the statutorily-described maximum, after consulting the guidelines as an advisory guide and applying the factors set forth in 18 U.S.C. §3553(a). (Cr-DE#469:4626-33,4792; Cr-DE#470:4981-82). Implicitly, the court also rejected the movant's argument that the court's failure to apply the jury's supplemental verdict violated *ex post facto* principles. (Cr-DE#469:4631-32).

The court found there was abundant evidence that the movant had extensively used nominees to conduct financial transactions, and therefore overruled the movant's objection to the sophisticated means enhancement in the PSI. (Cr-DE#469:4689-93,47975-96). Moreover, the court also overruled the movant's objection to the role enhancement, finding the movant had recruited Hazen, Hupman, Claps, and Rose to participate in the tax evasion conspiracy. (Cr-DE#477:4837-4840). In so ruling, the court further found that the movant utilized Claps and Hupman to act as nominees of the pain clinic corporations, and Hupman, Rose, and Hazen to conduct financial activities in order to conceal the movant's assets and income. (Cr-DE#477:4837-4840).

Regarding the obstruction enhancement, the court found the movant's Byrd affidavits directly contradicted the evidence at trial which showed that the movant had agreed with and used his

coconspirators to evade payment of his taxes, and that he knew the Byrd affidavits were false when he executed them. (Cr-DE#477:4861-62). The court further found the movant testified falsely at trial when he stated that he had deposited and disbursed funds from Hazen's account to evade Rose, not evade payment of taxes, thereby misleading the jury regarding the movant's state of mind and purpose for making the transactions. (Id.:4863). Finally, the court found the movant committed perjury at the trial of Hupman and Rose by denying the use or attempted use of Hupman to evade the payment of his income taxes, when the evidence at the movant's trial showed that he, in fact, extensively used Hupman as a nominee. (Id.:4866-67).

Finally, as to the loss amount, the court indicated that despite the jury's loss determination, under the advisory guidelines, he could not abdicate his duty by failing to make factual findings regarding the total loss amount, which exceeded the total found by the jury. (Cr-DE#470:4991-94; 471:5022-28).

After hearing further argument from the parties, the court considered the advisory guidelines and factors set forth in 18 U.S.C. §3553(a), and imposed a total sentence of 120 months in prison, comprised of 60 months as to Count 48, and 60 months as to Counts 49 and 50, to run consecutive to Count 48, but concurrent to each other. (Cr-DE#438).

The movant appealed, raising the following claims:[9]

> 1.   The court erred by denying the movant's motion for judgment of acquittal as to Counts 48 and 50.
>
> 2.   His sentences should be vacated on the basis that the court unlawfully enhanced his sentence, manipulated the advisory guidelines, and

---

[9]The claims are gleaned from the movant's initial brief on appeal (Cv-DE#14:Ex.3) and from the Eleventh's Circuit written, but unpublished opinion affirming the movant's convictions and sentences, United States v. Jabbour, 2006 WL 3369524 (11th Cir. 2006); (Cr-DE#494).

prejudged the movant based on evidence adduced at
the separate trial of his coconspirators.

(Cv-DE#14:Ex.3).

On November 21, 2006, the Eleventh Circuit, in a written, but unpublished opinion, affirmed the movant's convictions and sentences. <u>United States v. Jabbour</u>, 2006 WL 3369524 (11th Cir. 2006); (Cr-DE#494). Certiorari review was denied on October 1, 2007. <u>Jabbour v. United States</u>, __ U.S. __, 128 S.Ct. 232 (2007); (Cr-DE#498). Thus, the judgment of conviction in the underlying criminal case became final, for purposes of the federal one year limitations period under the AEDPA, at the latest on October 1, 2007, when certiorari review was denied by the Supreme Court.[10] His motion was due to be filed in this court within one year, or no later than October 1, 2008. <u>See</u>  <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). This motion to vacate was timely filed less than one year later on September 29, 2008.[11]  (Cv-DE#1).

### Discussion of the Claims

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented.[12] When

---

[10]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate.  <u>Sup.Ct.R</u>. 13; <u>see also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

[11]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

[12]Briefly, as narrated previously in this Report, the evidence against the petitioner was more than sufficient to support his convictions. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no deficient performance or

viewing the evidence in this case in its entirety, the alleged
errors raised in this collateral proceeding, neither individually
nor cumulatively, infused the proceedings with unfairness as to
deny the petitioner a fundamentally trial and due process of law.
The petitioner therefore is not entitled to habeas corpus relief.
See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in
federal habeas corpus proceeding that where there is no single
constitutional error existing, nothing can accumulate to the level
of a constitutional violation), overruled on other grounds, Slack
v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v.
Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a
cumulative-error analysis aggregates only actual errors to
determine their cumulative effect."). Contrary to the movant's
apparent assertions, the result of the proceedings were not
fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506
U.S. 364, 369-70 (1993).

     Specifically, the movant challenges counsel's effectiveness
for numerous reasons. Ineffective assistance of counsel claims are
subject to the two-part test enunciated in Strickland v.
Washington, 466 U.S. 668 (1994), which is not a favorable standard
to the movant. See Massaro v. United States, 538 U.S. 500, 505
(2003). To prevail on a claim of ineffective assistance, a movant
must demonstrate both that (1) counsel's performance was deficient,
meaning that it fell below an objective standard of reasonableness;
and (2) the deficient performance prejudiced the defendant.
Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir.
2000)(en banc), cert. denied, 531 U.S. 1204 (2001). ; Strickland v.

---

prejudice pursuant to Strickland has been established arising from any of the
claims raised in this collateral proceedings, nor has a denial of due process
been demonstrated. To the contrary, it is clear after independent review of the
record that the petitioner received a fair trial, and that no constitutional
violations occurred. Consequently, he has failed to demonstrate that he is
entitled to habeas corpus relief in this collateral proceeding.

Washington, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." Chandler, 218 F.3d at 1314, n.14. Strategic choices,

even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." <u>Chandler</u>, 218 F.3d at 1318 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial...worked adequately." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Rather, the movant must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." <u>Blackburn v. Foltz</u>, 828 F.2d 1177, 1186 (6th Circ. 1987), <u>cert. den'd</u>, 485 U.S. 970 (1988), <u>see also</u>, <u>Montgomery v. Petersen</u>, 846 F.2d 407, 416 (7th Cir. 1988).

However, it is well settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5 Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11 Cir.), <u>cert. denied</u>, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. <u>See</u> <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992)(<u>quoting</u> <u>United States ex rel. Cosey v. Wolff</u>, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland v. Washington</u>, 466 U.S. at 690-91.

In **claim one**, the movant asserts that the government failed to disclose exculpatory evidence, in violation of <u>Brady</u> and <u>Giglio</u>. (Cv-DE#1; Cv-DE#3:18). According to the movant, the government failed to disclose, and intentionally withheld information concerning tax improprieties committed by its key witness, Greg Brown, a former employee of GIASI.[13]

---

[13]According to the movant, four years after Brown testified at his trial, Brown was charged with wire fraud, mail fraud, and tax fraud violations.

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a <u>Brady</u> violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11th Cir. 1987), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). In this collateral proceeding, the movant has failed to establish any of the prongs necessary to establish a <u>Brady</u> violation.

Even if we accept the movant's allegation as true that the government withheld the fact that Brown had failed to file tax returns for the years he worked at GIASI, one of the sham investment firms at issue in the movant's trial, the movant still is not entitled to relief as he cannot satisfy the remaining prongs of a <u>Brady</u> violation. At trial, the evidence established that the movant kept no assets in his name. At his instruction, Hupman, the movant's ex-wife, served as the nominal director of his company, depositing his funds into her checking account for his use, and pre-signing blank checks for him. Likewise, as instructed by the movant, Hazen, a nominal corporate director for DeAngelis, pre-signed blank checks for the movant's and DeAngelis' use. The movant processed $147,000 of income through the checking account of Rose, his girlfriend, and he established utility accounts at DeAngelis' residence in the name of Gyonki Berki, the mother of his child. At DeAngelis' instruction, Claps negotiated company checks with "repay

loan" in the memorandum line, giving the cash to the movant.[14] The movant also introduced DeAngelis to his tax preparer, Thomas Lopez, and paid for Lopez to prepare one of DeAngelis' tax returns. It was also established that both DeAngelis and the movant had failed to file tax returns in some years and, in other years, filed but made no payment.

It should be noted that as to Brown's failure to file tax returns, the defense counsel was aware of this fact as evidenced by Brown's testimony before the grand jury, a copy of which was provided to the defense prior to trial. In fact, defense counsel used the grand jury transcript to vigorously cross-examine Brown regarding this fact. (Cv-DE#4:Ex.C:Testimony of Greg Brown:1285-89,1569-71,1589-92). Sometime after Brown's testimony at the movant's trial, he was indicated for multiple offenses committed after the movant's trial, as well as, arising from his failure to file tax returns during the years he worked at GIASI. (Cv-DE#14:Ex.2). Regardless, review of Brown's testimony at movant's trial focused on the movant's relationship with GIASI, the sham investment firm at the center of the fraud and money laundering counts for which the movant was acquitted. Even absent Brown's testimony, there was more than sufficient, independent evidence adduced at trial to support the movant's convictions.

Regarding his convictions for tax evasion, a violation of 26 U.S.C. §7201, the government was required to prove "(1) willfulness; (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." United States v. Kaiser, 893 F.2d 1300, 1305 (11th Cir. 1990). To be convicted of aiding and abetting, the movant "must assist the perpetrator of the crime while sharing in the requisite criminal

---

[14]Moreover, the movant posted bond for DeAngelis, Hupman, and Rose when they were arrested.

intent." <u>United States v. Schwartz</u>, 666 F.2d 461, 463 (11th Cir.
1982). Significantly, as found by the Eleventh Circuit in affirming
the convictions found that the movant knew about DeAngelis' tax
deficiency and willingly participated in DeAngelis' tax evasion.
<u>United States v. Jabbour</u>, 2006 WL 3369524, *2-3 (11th Cir. 2006).
The movant took DeAngelis to his tax preparer and paid for the
preparation of DeAngelis' tax return, and arranged for DeAngelis'
bail. <u>Id</u>.

Regarding his conspiracy conviction, the government was
required to prove, in addition to the tax evasion, that "there was
an agreement whose purpose was to impede the IRS (the conspiracy),
and that each defendant knowingly participated in that conspiracy."
<u>United States v. Adkinson</u>, 158 F.3d 1147, 1154 (11th Cir. 1998)
(citations ommitted). In this case, as noted by the Eleventh
Circuit, the movant and DeAngelis agreed to evade taxation. <u>United
States v. Jabbour</u>, 2006 WL 3369524, *3 (11th Cir. 2006). The jury
was able to conclude that the movant's pattern of tax evasion and
asset concealment through the use of nominees, which were identical
to that of DeAngelis', could only be explained by the existence of
an agreement between the two men. <u>Id</u>. The appellate court concluded
that there was sufficient evidence that the movant conspired with
DeAngelis to evade the payment of their taxes. <u>Id</u>.

In this case, the government also presented the testimony of
other participants to the events: Patricia Halprin, Carlie Hupman,
Tonya Rose, Catia Pisa-Jenkins, Robert Zayas, Thomas Lopez, CPA,
Michele Marsh, and Gyonki Berki. Under these circumstances, given
the totality of the evidence in the light most favorable to the
government, the movant has failed to establish deficient
performance or prejudice arising from counsel's failure to pursue
the government's alleged <u>Brady</u> violation and failure to impeach the
government witness, Brown. The movant has failed to demonstrate in

this proceeding that the outcome of the guilt phase of his trial would have resulted in an acquittal of all charges. Thus, the movant is entitled to no relief on these claims. See Strickland v. Washington, supra.

Second, to the extent that the movant means to argue that the government suborned perjury by allowing Brown to lie during his trial testimony regarding his involvement in the events underlying the movant's criminal prosecution, the claim fails on the merits. There is no evidence of record to suggest that the government suborned perjury. Moreover, even if Brown's testimony were deemed to be false, and knowingly introduced by the government, it is not material because there is no likelihood that the testimony could have affected the judgment of the jury in light of the ample evidence implicating the movant in the offense.

In order to prevail on a Giglio claim, the movant must establish that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony," and that the falsehood was material. Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999)(quoting, United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995)). Under Giglio, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. (quoting, United States v. Agurs, 427 U.S. 97, 103 (1976)).

The movant has failed to provide any objective evidence that the government suborned perjury. Notwithstanding, where a prosecutor knowingly uses perjured testimony, or failed to correct what he subsequently learned was false testimony, the falsehood is deemed to be material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (emphasis added);

16

accord, <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959). No such showing has been made here. Consequently, the movant cannot demonstrate prejudice stemming from counsel's alleged deficient performance in failing to pursue this claim on appeal.

In **claim two**, the movant asserts that he was denied effective assistance of counsel for numerous specified reasons.

Specifically, in **claim 2.1**, the movant asserts he was denied effective assistance of counsel, where his lawyer failed to seek recusal of the trial judge based on judicial bias and prejudice. In **claim 2.2**, the movant asserts he was denied effective assistance of counsel, where his lawyer failed to challenge on appeal that the trial judge was biased against the movant. It appears the movant means to argue that the court lost its neutrality when it refused to accept the movant's negotiated plea after trial had commenced.

As noted by the Eleventh Circuit on appeal in rejecting a similar argument, a plea bargain that will result "in too light a sentence under the circumstances is a sound reason for a refusal to accept it. Only in unusual circumstances will the rejection of a plea bargain be an abuse of discretion." <u>United States v. Jabbour</u>, 2006 WL 3369524, *5 (11th Cir. 2006)(<u>quoting</u> <u>United States v. Ocanas</u>, 628 F.2d 353, 358 (5th Cir. 1980). The Court further noted that under the guidelines, a court "may accept a plea agreement if it determines that the remaining charges adequately reflect the seriousness of the actual offense behavior." <u>United States v. Jabbour</u>, 2006 WL 3369524, *5 (11th Cir. 2006)(<u>quoting</u> U.S.S.G. §6B1.2(a)). In this case, as will be recalled, the district court explained at the movant's sentencing that it had refused to accept the plea because it did not include treatment as to the movant's identity theft of Gyonki Berki. (Cr-DE#477:4891-92). The court's

rejection of the plea was, therefore, not error, as there were legitimate concerns that the terms of the plea did not adequately reflect the seriousness of the offense behavior. Consequently, no deficient performance or prejudice has been established arising from counsel's failure to seek recusal of the judge, nor for his failure to raise on appeal the issue as asserted by the movant here. Regardless, the claim also fails on the merits.

Regarding the court's lack of neutrality or bias, Title 28 U.S.C. §455 requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §§ 455(a) & (b)(1) (2000). The purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 874, 865 (1988). Title 28 U.S.C. §455(b)(1) provides that a judge shall recuse himself where he has a personal bias or prejudice concerning a party. The standard for recusal under §455 is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality. See United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003), cert. den'd, 540 U.S. 1149 (2004); see also, United States v. Kelly, 888 F.2d 732, 744-45 (11th Cir.1989); Parker v. Connor Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988).

It is well established that "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." Liteky v. United States, 510 U.S. 540, 556 (1994); see also, Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001). Likewise, judicial remarks during the court of a proceeding--even those that are "critical or disapproving of, or even hostile to, counsel, the parties or their cases" -- will not ordinarily support

a bias motion. <u>Liteky</u>, <u>supra</u> at 556. In <u>Liteky</u>, the Supreme Court explained that "a judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune." <u>Id</u>. An allegation of impartiality must be supported by some factual basis, and a motion for recusal cannot be based on unsupported, irrational or highly tenuous speculation. <u>United States v. Cerceda</u>, 188 F.3d 1291 (11th Cir. 1999). Absent a showing of bias, the movant cannot prevail on this claim. No showing has been made that the court was not neutral in the underlying criminal proceedings. Consequently, counsel was not deficient for failing to pursue this nonmeritorious claim, and the movant is thus entitled to no relief on this claim. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Finally, the movant complains that the court unlawfully imposed upward departures at sentencing without considering the correct guidelines and statutory factors as required under <u>United States v. Booker</u>, 543 U.S. 220 (2005). (Cv-DE#3). According to the movant, the court had a preconceived notion of the sentence it wanted to impose and manipulated the guidelines so as to arrive at that sentence it ultimately imposed. He faults counsel for failing to pursue this issue. This claim is also refuted by the record.

The substantive issue underlying this ineffective assistance of counsel claim was raised and rejected on direct appeal. <u>See</u> <u>United States v. Lindsey</u>, 482 F.3d at 1291-93. Thus, it is procedurally barred from review in this collateral proceeding. There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the movant demonstrates cause for the procedural default as

well as actual prejudice from the failure to appeal. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.).

No change of circumstance has been demonstrated in this collateral proceeding sufficient to warrant relitigation of this claim. Thus, such a claim is barred from review here. See United States v. Frady, 456 U.S. 152, 167-69 (1982); Campino v. United States, 968 F.2d 187, 189-90 (2nd Cir. 1992). Regardless, the claim also fails on the merits.

Pursuant to Booker, "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriquez, 398 F.3d 1291, 1298 (11th Cir.) (emphasis in original), cert. den'd, 545 U.S. 1127 (2005). The Eleventh Circuit has held that there are two types of Booker errors: (1) constitutional error resulting from enhancements based on judicial fact-finding, and (2) non-constitutional statutory error resulting from mandatory application of the Guidelines. See United States v. Shelton, 400 F.3d 1325, 1330-31

(11th Cir. 2005).

In this case, there was neither type of <u>Booker</u> error. After considering and resolving the objections to the PSI, the court explained that it had considered the parties' statements and arguments, as well as, the factors set forth in 18 U.S.C. §3553(a), when it ultimately imposed a total sentence of 120 months in prison. (Cr-DE#471:5050-66). Moreover, the district court calculated the sentencing range consistent with <u>United States v. Crawford</u>, 407 F.3d 1174 (11th Cir. 2005), and then stated that it had considered all of the 18 U.S.C. §3553(a) factors before imposing its sentence. Accordingly, the district court satisfied its obligations under <u>Booker</u>, and there was no <u>Booker</u> error, of either a constitutional or statutory variety. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim.

In **claim 2.3**, the movant asserts he was denied effective assistance of counsel, where his lawyer failed to conduct adequate pretrial investigation. In support thereof, the movant asserts that counsel should have independently secured Brown's tax-related materials prior to trial. (Cv-DE#3:36).

First, no showing has been made in this habeas proceeding that counsel did not have all necessary documents to effectively cross-examine Brown. Even if the generalized allegations as proffered by the movant here are true, in that counsel was somehow deficient in this regard, no showing has been made that the outcome of the trial was affected due to this deficiency. As previously discussed in this Report, counsel was able to effectively cross-examine Brown regarding his tax related problems. Thus, no prejudice under <u>Strickland</u> has been established and the movant is therefore

entitled to no relief on this claim.

In **claim 2.4**, the movant asserts he was denied effective assistance of counsel, where his lawyer failed to challenge the and/or otherwise object to his sentence which violated the dictates of <u>Booker</u>. (Cv-DE#1:6; Cv-DE#3:30).

As discussed in relation to claim 2.3 above, no <u>Booker</u> error was made here as the movant's sentences were within the maximum authorized by the movant's guilty plea and jury verdicts, including its special verdicts of five years for Count 48, a violation of 18 U.S.C. §371, and five years each as to Counts 49 and 50 for violations of 26 U.S.C. §7201. Thus, even if counsel had challenged the movant's sentence on the basis raised herein, the challenge would not have been sustained as the court clearly considered the advisory guideline range and statutory factors when imposing its sentence. Consequently, no deficient performance or prejudice has been established arising from counsel's failure to pursue this issue at sentencing or on appeal. Thus, the movant is entitled to no relief on this claim.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. <u>See</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this <u>4</u>th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Robert J. Jabbour, <u>Pro Se</u>
      Reg. No. 29522-004
      F.C.I.-Miami
      P.O. Box 779800
      Miami, FL  33177

      Stephanie D. Evans, AUSA
      U.S. Attorney's Office
      500 Australian Avenue, Suite 400
      West Palm Beach, FL 33401